In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 25-1577

ARKEYO LLC,

*Plaintiff-Appellant,*

*v.*

SAGGEZZA, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-08112 — **Elaine E. Bucklo**, *Judge.*

_____

ARGUED OCTOBER 28, 2025 — DECIDED JULY 30, 2026

_____

Before BRENNAN, *Chief Judge*, and JACKSON-AKIWUMI and
LEE, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. This case is a dispute be-
tween two companies that developed software for the coin-
counting machines at a bank. The bank, UK-based Metro
Bank PLC, first hired Arkeyo LLC for the job. When Arkeyo's
software began showing its age, Metro employed Saggezza
UK, a subsidiary of Chicago-based Saggezza, Inc., to develop
a more modern replacement. Arkeyo claims that Saggezza,

Inc., while developing the new software, infringed Arkeyo's copyrights and trade secrets, tortiously interfered with Arkeyo's contract and business relationship with Metro, and converted Arkeyo's property. Arkeyo did not prevail on any of these claims in the district court. The district court granted summary judgment for Saggezza, Inc., denied Arkeyo's motion for relief from the judgment, denied Arkeyo's request for spoliation sanctions, and granted Saggezza, Inc.'s motion for attorney's fees. We affirm in all respects.

**I**

Metro hired Arkeyo in 2010 to design software for Metro's Magic Money Machines, which are coin-counting machines customers can use in Metro's retail branches. Arkeyo and Metro memorialized their relationship in a contract. The contract stipulated that Metro agreed to pay Arkeyo for software and coin-counting services on a per-machine basis for ten years after an Arkeyo-operated machine was installed.

By 2015, Arkeyo's software had become outdated and vulnerable to security threats. So in November of that year, Metro began talks with Saggezza UK to make new software for the machines. In March 2016, Metro delivered an Arkeyo touchscreen computer to Saggezza, Inc.'s office in Chicago. The idea was that Saggezza UK could use the computer as a reference point for the user experience and certain features that Metro wanted the new software to include. The touchscreen computer contained only an "executable" version of Arkeyo's software—that is, a version of the software in its final, consumer-facing format. Saggezza UK spent a few days tinkering, but was unable to log into the computer and ultimately did not use the computer to develop its new software.

Metro and Saggezza UK then executed a "framework services agreement" and "statement of work" for Saggezza UK to create the new software. Saggezza UK then contracted separately with Saggezza, Inc., and another of Saggezza, Inc.'s subsidiaries, Saggezza India, to perform services in connection with the job for Metro. Saggezza UK delivered the last version of the completed software to Metro in December 2016.

Arkeyo responded with a number of lawsuits against virtually everyone involved in developing the new software. These cases included separate lawsuits against Metro and the machines' hardware manufacturer, Cummins-Allison, in Pennsylvania federal court. *See Arkeyo, LLC v. Metro Bank PLC*, 2:18-CV-01012 (E.D. Pa.); *Arkeyo, LLC v. Cummins Allison Corp.*, 342 F. Supp. 3d 622 (E.D. Pa. 2017). Arkeyo also filed a lawsuit against Metro in the UK. *See Arkeyo, LLC v. Metro Bank PLC*, Case No. IL-2022-000039 [2022] EWHC (Ch) (Eng.).

In the instant lawsuit filed in the Northern District of Illinois, Arkeyo asserted claims against Saggezza, Inc., for direct and contributory copyright infringement, misappropriation of trade secrets, tortious interference, and conversion. Arkeyo did not, however, name Saggezza UK as a defendant.

Per the district court, this omission was fatal to Arkeyo's entire case. The district court granted summary judgment for Saggezza, Inc., on all claims because the record did not show that Saggezza, Inc.,—as opposed to its subsidiary Saggezza UK—was responsible for any of the alleged infringing or tortious conduct. The district court further explained that nothing in the record showed that Saggezza, Inc., directed or authorized the alleged misconduct, meaning it could not be liable for its subsidiary's conduct under a "veil piercing" theory. *See Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 237 (Ill. 2007)

(holding that parent company can be liable for acts of a subsidiary if it "specifically directs an activity [of the subsidiary], where injury is foreseeable"). In granting summary judgment for Saggezza, Inc., the district court terminated the case without addressing Arkeyo's then-pending motion for spoliation sanctions. In that motion, Arkeyo claimed Saggezza, Inc., destroyed evidence in violation of its discovery obligations. *See* Fed. R. Civ. P. 37(e).

After the unfavorable summary judgment decision, Arkeyo asked the district court to reconsider on grounds of newly discovered evidence. Fed. R. Civ. P. 59(e). The "new evidence" was purportedly source code produced in the UK litigation between Arkeyo and Metro. The district court denied the reconsideration motion, noting Arkeyo had not produced the source code or even described how it supported Arkeyo's claims. Instead, the district court noted, Arkeyo had merely rehashed the same points the summary judgment decision rejected.

At the same time as it denied Arkeyo's motion for reconsideration, the district court awarded attorneys' fees to Saggezza, Inc., under the fee-shifting provisions of the Copyright Act, 17 U.S.C. § 505, and the Defend Trade Secrets Act, 18 U.S.C. § 1836. Arkeyo appeals each of the district court's rulings.

## II

We begin with the district court's grant of summary judgment, which we review de novo. *Rabenhorst v. Noem*, 162 F.4th 856, 862 (7th Cir. 2025). We must construe all facts in Arkeyo's favor and grant Arkeyo the benefit of all reasonable inferences that may be drawn from those facts. *Id.*

The district court resolved all the claims on grounds that
Saggezza, Inc., could not be liable for any of the allegedly in-
fringing or tortious acts of its subsidiary, Saggezza UK. The
district court held in the alternative that Arkeyo did not offer
"legal authority nor reasoned analysis" to support any of its
claims. We take this second path and review each claim on its
merits. *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th
754, 787 (7th Cir. 2024) (en banc) (we may affirm summary
judgment on any basis supported by the record).

### A. Copyright Infringement

Of Arkeyo's several claims, we turn first to the copyright
claims. Copyright law prohibits copying original elements of
a work in which the author has a valid copyright. *Feist Publ'ns,
Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); 17 U.S.C.
§ 501. Arkeyo brings two copyright claims based on
Saggezza's alleged copying of Arkeyo's source code, one for
direct infringement and one for contributory infringement.[1]
*See Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 964
(2026) (defining direct and contributory copyright infringe-
ment). Both types of infringement require a copyright plain-
tiff to show that, "as a factual matter, the defendant copied
the plaintiff's protected work." *Richardson v. Kharbouch*, 156
F.4th 849, 856 (7th Cir. 2025) (citation omitted); *see also Feist*,
499 U.S. at 361 (copyright plaintiff must establish copying in
order to show infringement).

Arkeyo's copyright claims fail on this basis: there's no ev-
idence of copying. Nothing in the record suggests that
Saggezza's software contains any protectable elements of

---

[1] Hereinafter we refer to all the Saggezza entities as "Saggezza" unless
otherwise noted.

Arkeyo's source code. Even Arkeyo's expert witness did not identify any string of source code that was common between Arkeyo's and Saggezza's software.

Notwithstanding this evidentiary shortcoming, Arkeyo contends that there are several "arbitrary similarities" between the Arkeyo software and the Saggezza software that can only be explained by an inference of copying. These claimed similarities are (1) the Arkeyo logo appearing on one machine running on the Saggezza software; (2) an "audible knocking feature"; and (3) a bug in the Saggezza software's coin-counting functionality that mirrors one in Arkeyo's. Arkeyo argues these similarities defy coincidence. Citing *Bucklew v. Hawkins, Ash, Baptie & Co.*, Arkeyo says that the probability that Saggezza replicated these features independently is so remote that "an inference of copying may be drawn without any additional evidence." 329 F.3d 923, 926 (7th Cir. 2003).

*Bucklew* does not do the work Arkeyo asks of it. In that case, we inferred copying due to a "striking similarity between plaintiff's and defendant's electronic forms, which contained identical patterns of bolding, identical headings, the same font, and (most damning) an identical 'output range' that served no purpose." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1100 n.3 (7th Cir. 2017) (discussing *Bucklew*, 329 F.3d at 926–27). Here, by contrast, the record shows that Saggezza's software is entirely different from Arkeyo's. The programs run on different versions of Windows and use different methods to display animations. Further, Saggezza's code is shorter and more efficient than Arkeyo's code, reflecting a fundamentally different software development approach. In light of these fundamental

differences, it is not reasonable to draw an inference of copying from the superficial similarities to which Arkeyo points. Summary judgment was proper on Arkeyo's copyright claims.

## B. Trade Secret Misappropriation

Arkeyo next claims Saggezza misappropriated trade secrets in Arkeyo's software in violation of the Defend Trade Secrets Act. Under this statute, information qualifies as a "trade secret" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by" another. 18 U.S.C. § 1839(3). Importantly, "[i]nformation that is public knowledge or that is generally known in an industry cannot be a trade secret." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).

We note at the outset that it is not entirely clear what information Arkeyo asserts is a trade secret. But as best we can tell, Arkeyo's trade secret claim focuses on two alleged misappropriations. The first is the source code of Arkeyo's software. The second are features of its software separate and apart from the source code.

Arkeyo's claim regarding the source code fails under the first element of the statute. The undisputed factual record shows that Arkeyo made a full version of its software available on the Internet for over a year at the URL www.arkeyo.com/new_software. The software was not password protected; anyone who knew the URL could download the software without restrictions.

Arkeyo argues it did not publicly disclose its source code because, in order to access the code, one would need to "guess" the URL where it was located. To support this point, Arkeyo's expert compared the URL to "a password with 27 characters which would require guessing from quintillions of combinations." But this analogy is strained at best. The first 15 characters of the URL were anything but random; they were Arkeyo's website domain (www.arkeyo.com/). And the remaining 12 characters (new_software) would be a relatively obvious guess for someone looking to find Arkeyo's software. This public disclosure forecloses Arkeyo's trade secrets claim as to the source code itself. *Ruckelshaus*, 467 U.S. at 1002.

As to Arkeyo's claim regarding the specific features of its software, this argument too fails. Most of the elements over which Arkeyo claims trade secret protection were "readily ascertainable" to any user of the software. 18 U.S.C. § 1839(3)(B). Arkeyo's most detailed formulation of its trade secret claim (in its expert report) mostly lists "functionalities" that would be apparent to anyone operating the software, such as "receipt functionality"; an "on-screen game"; "accurate handling and processing of British coin currency"; and other "features visible to consumers." These publicly disclosed, readily ascertainable features are not entitled to trade secret protection. *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) ("Things that any user or passer-by sees at a glance are 'readily ascertainable'").

To be fair, some other functions over which Arkeyo claims protection, including "offsorting," "bin reporting," and "batch processing control," are less public-facing or identifiable. But these functions are equally ineligible for protection because they simply describe "broad areas of [coin-counting]

technology," not "concrete secrets." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540 (7th Cir. 2021) (quoting *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992)).

At bottom, most of Arkeyo's supposed trade secrets were publicly disclosed. The rest are too generic. For these reasons, Arkeyo's trade-secret claim fails as a matter of law.

## C. Tortious Interference

Next are Arkeyo's claims for tortious interference with a contract and tortious interference with a prospective contractual relationship. The parties agree Illinois law governs. To prove tortious interference with a contract, a plaintiff must show "(1) the existence of a valid and enforceable contract between the plaintiff and a third party, (2) that the defendant was aware of the contract, (3) that the defendant intentionally and unjustifiably induced a breach of the contract, (4) that the wrongful conduct of the defendant caused a subsequent breach of the contract by the third party, and (5) that the plaintiff was damaged as a result." *Santa Rosa Mall, LLC v. Aon Risk Servs. Cent., Inc.*, 2023 IL App (1st) 221352, ¶ 67 (citation modified); *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 877–78 (Ill. 1991). Similarly, a claim for tortious interference with a prospective business relationship requires "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996).

Both torts share an important limiting principle: "legitimate competition" is not grounds for a tortious-interference claim. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1019 (Ill. 2008). In other words, "one may not simply sue any competitor who lures away customers"—only those who do so through "wrongful means." *Chi.'s Pizza, Inc. v. Chi.'s Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 994 (Ill. App. Ct. 2008) (citation omitted). "Wrongful means" include unlawful acts such as antitrust or intellectual property violations. *Dustman v. Advoc. Aurora Health*, 2021 IL App (4th) 210157, ¶¶ 57–58; *Restatement (Second) of Torts* § 767 cmt. c (Am. L. Inst. 1979).

Arkeyo's tortious-interference claims run headfirst into this rule. The gravamen of Arkeyo's claims is that Saggezza interfered with Arkeyo's agreement with Metro by pitching itself as a developer of replacement software for the Magic Money Machine while the agreement was still in effect. But Arkeyo does not explain why it was "wrongful" for Saggezza, Arkeyo's competitor, to offer a better product to convince Metro to take its business elsewhere. *See A-Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1405 (7th Cir. 1992) (no tortious interference where defendant's goal was to "advance its interests at the expense of its competitor"). Nor does Arkeyo offer any reason to think that Saggezza was motivated by a desire to harm Arkeyo. Such evidence would be necessary to overcome the general rule that trying to obtain a competitor's business for oneself is not illegal. As the Supreme Court of Illinois has explained, Illinois law "allows one to divert business from one's competitors generally as well as from one's particular competitors provided one's intent is, at least in part, to further one's business and is not solely motivated

by spite or ill will." *Gen. Motors Corp. v. State Motor Vehicle Rev. Bd.*, 862 N.E.2d 209, 220 (Ill. 2007).

Indeed, the only "wrongful" acts that Arkeyo points to are Saggezza's purported copyright infringement, trade secret misappropriation, and conversion. As we explain elsewhere in this opinion, none of those claims have merit, so they cannot serve as predicate wrongful acts for Arkeyo's tortious-interference claims. *See A-Abart*, 956 F.2d at 1405 (affirming summary judgment on tortious-interference claim where defendant's "actions, as we have held above, did not contribute to an unlawful restraint of trade"). We therefore affirm summary judgment on the tortious-interference claims.

### D. Conversion

Arkeyo's final claim is for conversion, based on Saggezza's allegedly unlawful possession of the Arkeyo touchscreen computer. The parties again agree Illinois law governs. Conversion requires a plaintiff to show: "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998); *see also Restatement (Second) of Torts* § 222A (Am. L. Inst. 1965).

Saggezza's temporary possession and use of the Arkeyo touchscreen computer in March 2016 does not constitute conversion for multiple reasons. We need discuss only two. As an initial matter, the record is undisputed that Metro, not Arkeyo, owned the touchscreen computer that Metro loaned to Saggezza. Accordingly, Arkeyo did not have "an absolute

and unconditional right to the immediate possession of" the computer. *Cirrincione*, 703 N.E.2d at 70.

Arkeyo's conversion claim also fails on the demand element. Although Illinois courts have not discussed the demand requirement for conversion claims at length, we have previously predicted that the Supreme Court of Illinois would require plaintiffs to make a demand for the subject property before filing suit. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 741 (7th Cir. 2016). Arkeyo has not argued, much less attempted to show, that it made a pre-suit demand for the touchscreen computer. Instead, Arkeyo vaguely asserts in its brief on appeal that a demand is unnecessary if there is "some other independent act of conversion" beyond simply taking possession of the property. But Arkeyo does not identify what this "independent act" was, so the bare assertion provides no basis for reversal. *See Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 629 (7th Cir. 2022) (conclusory arguments lacking a factual basis are waived). We affirm summary judgment on the conversion claim.

**III**

We now consider Arkeyo's request for sanctions. Arkeyo claims that Saggezza intentionally destroyed two pieces of evidence: (1) the Arkeyo touchscreen computer that Metro shipped to Saggezza, Inc.'s Chicago office; and (2) a purported alternate version of the source code for Saggezza's software (a version that Arkeyo claims contains evidence that Saggezza copied Arkeyo's code). Arkeyo invokes Federal Rule of Civil Procedure 37(e)(2), which authorizes sanctions against parties who destroy evidence "with the intent to deprive another party of the information's use in the litigation." We review the district court's decision to deny sanctions for

abuse of discretion. *Pable v. Chi. Transit Auth.*, 145 F.4th 712, 719 (7th Cir. 2025).

At the outset, we note that the district court did not discuss, much less provide a reasoned explanation for, its decision to deny Arkeyo's sanctions motion. With that said, we may affirm even a "cursory" denial of sanctions "when the record clearly reflect[s] on its face whether sanctions were appropriate." *Ross v. City of Waukegan*, 5 F.3d 1084, 1089 (7th Cir. 1993); *see also Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987).

Such is the case here. Arkeyo's spoliation claims consist entirely of unfounded speculation. As to the touchscreen computer, Arkeyo speculates that Saggezza destroyed the computer in order to hide unfavorable evidence of Saggezza's copyright infringement and trade secret misappropriation. But Saggezza's project manager testified that Saggezza did not produce the computer in discovery because Saggezza returned it to Metro when Saggezza was done with it—not because Saggezza destroyed it. Arkeyo offers no evidence calling that explanation into question.

Similarly, Arkeyo's assertion that there exists another version of the Saggezza source code that contained evidence of copying has no support in the record. Arkeyo cannot obtain sanctions for Saggezza's destruction of evidence without at least some indication that the spoliated evidence existed in the first place. *Cf. Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir. 2016) (party moving for sanctions has the burden to prove the factual basis for sanctions by a preponderance of evidence). Because both of Arkeyo's sanctions arguments rest on conjecture that Saggezza destroyed evidence favorable to

Arkeyo's case, we affirm the district court's denial of sanctions.

## IV

We turn to Arkeyo's motion to reconsider the judgment under Federal Rule of Civil Procedure 59(e). Specifically, Arkeyo sought reconsideration of the district court's summary judgment decision based on newly discovered evidence. This required Arkeyo to show that "(1) it has evidence that was discovered post-trial; (2) it had exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 955 (7th Cir. 2013) (citation omitted).

Arkeyo's request for reconsideration did not clear this high bar. Arkeyo's reply in support of reconsideration and its appellate briefs characterize its reconsideration motion as based on supposedly new Saggezza source code disclosed in the UK litigation between Arkeyo and Metro. But Arkeyo's initial motion for reconsideration merely "rehash[ed]" its summary judgment arguments. *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014). In fact, the document Arkeyo styled as its motion to reconsider was simply a reproduction of its statement of material facts in support of summary judgment. Arkeyo's desire to relitigate the issues it lost is not an appropriate basis for a Rule 59 motion. *Id*. The district court properly exercised its discretion to deny Arkeyo's motion.

## V

Lastly, Arkeyo contends the district court abused its discretion in awarding attorneys' fees to Saggezza as a prevailing

copyright litigant. *See* 17 U.S.C. § 505. But there is a "strong presumption" in our circuit that winning copyright defendants are entitled to fees, and the district court was well within its discretion to heed that presumption in light of Arkeyo's objectively baseless copyright claims. *Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*, 77 F.4th 630, 631–32 (7th Cir. 2023). We therefore affirm the award of fees under the Copyright Act.

The district court alternatively awarded fees to Saggezza under the Defend Trade Secrets Act's fee-shifting provision, which authorizes defendants to recover attorney's fees if the plaintiff brought or prosecuted its trade secrets claim "in bad faith." 18 U.S.C. § 1836(b)(3)(D). Because we affirm the district court's award of fees under the Copyright Act, we need not decide whether the district court properly awarded fees under the Defend Trade Secrets Act.

## VI

For the reasons above, the district court's decisions are AFFIRMED.